IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. EINHORN, Administrator of the TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA & VICINITY,<br><br>              Plaintiff,<br><br>      v.<br><br>APEX EQUIPMENT COMPANY; ALLIED CONCRETE & SUPPLY CORPORATION; MURWIN PROPERTY MANAGEMENT, LP d/b/a ALLIED SELF STORAGE; DRE CORPORATION; ALLIED LANDSCAPE & CONTRACTOR SUPPLY COMPANY; MURWIN CONSTRUCTION SYSTEMS, INC.; WILLIAM MURWIN, JR.; WILLIAM MURWIN, III; JOSHUA GORDON,<br><br>              Defendants. | Civil Action No. _____ |

## COMPLAINT

### JURISDICTION AND VENUE

1. The jurisdiction of this Court rests on Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, Section 4301 of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1451, a statutory amendment to ERISA, and federal common law, 28 U.S.C. § 1331.

2. Venue is proper in this District pursuant to Section 4301(d) of MPPAA, 29 U.S.C. § 1451(d), as the Defendants reside, do business, and may be found in this District, and pursuant to 28 U.S.C. § 1391, as Plaintiff's claims arose in this District.

## PARTIES AND RELATED ENTITIES

3. Plaintiff, William J. Einhorn ("Einhorn"), is the Administrator of the Teamsters Pension Trust Fund of Philadelphia & Vicinity ("Fund"). He is a fiduciary of the Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and he has been authorized by the Trustees of the Fund to bring this action on their behalf and on behalf of the Fund.

4. The Fund is an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), and a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

5. The Fund was established pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), by various local unions located in the Philadelphia metropolitan area that are affiliated with the International Brotherhood of Teamsters ("IBT") and various employers having collective bargaining agreements with these local unions.

6. The Fund exists for the exclusive purpose of providing benefits to its participants and beneficiaries.

7. The Fund is duly administered by its Board of Trustees and maintains its office at 6981 N. Park Drive, Suite 400, Pennsauken, NJ 08109.

8. Defendant Apex Equipment Company ("Apex") is a corporation that has maintained its principal place of business at 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

9. Defendant Allied Concrete & Supply Corporation ("Allied Concrete") is a corporation that has maintained its principal place of business at 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

10. Murwin Property Management, LP d/b/a Allied Self Storage ("Murwin Property") is a limited partnership that maintains its principal place of business at 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

11. DRE Corporation ("DRE") is a corporation that maintains its principal place of business at 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

12. Allied Landscape & Contractor Supply Company ("Allied Landscape") is a corporation that maintains its principal place of business at 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

13. Murwin Construction Systems, Inc. ("Murwin Construction") is a corporation that maintains its principal place of business at 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

14. Defendant William Murwin, Jr. ("Murwin Jr.") is a shareholder and officer of Defendants Apex and Allied Concrete. Murwin Jr. owns in excess of 80 percent of the total combined voting power of all classes of stock of Defendants Apex and Allied Concrete entitled to vote and in excess of 80 percent of the total value of shares of all classes of stock of Defendants Apex and Allied Concrete. Murwin Jr. is President of Apex and President of Allied Concrete.

15. Defendant William Murwin III ("Murwin III") is a shareholder and officer of Defendants Apex and Allied Concrete. Murwin III owns .012% of Apex and is Vice President of Apex. Murwin III owns .012% of Allied Concrete and is Vice President and Secretary of Allied Concrete.

16. Defendant Joshua Gordon is the Treasurer of Apex and is the Secretary of Allied Concrete.

## FACTUAL BACKGROUND

### A. The Exposure of Apex and Allied Concrete to Withdrawal Liability Owed the Fund

17. Apex was established and incorporated by William Murwin Sr. ("Murwin Sr.") on April 23, 1957.

18. Apex was formerly party to series of successive collective bargaining agreements with Teamsters Local Union No. 384 that obligated Apex to make prompt monthly contributions to the Fund on behalf of employees represented by Local 384.

19. Allied Concrete was established and incorporated by Murwin Sr. on March 4, 1953.

20. Murwin Sr. ultimately transitioned out of Apex and Allied Concrete and was replaced by his sons, Murwin Jr. and Thad.

21. After Murwin Sr. transitioned out of the business, and until Thad's death on September 1, 2009, Thad and Murwin Jr. each owned 49.97% of the stock in Apex and Allied Concrete, and Murwin III owned .06% of the stock in each company.

22. The fact that Apex contributed to the Fund subjected Apex to withdrawal liability under MPPAA if Apex withdrew from the Fund.

23. The common ownership of stock that Murwin Jr. and Thad held in Apex and Allied Concrete rendered the two companies "under common control" for purposes of ERISA Section 4001(b)(1) and its applicable regulations.

24. The status of Apex and Allied Concrete as under "common control" rendered Allied Concrete jointly and severally liable for any withdrawal liability that by Apex owed the Fund.

4

**B. The Defendants' Knowledge that Apex and Allied Concrete Had Exposure to Withdrawal Liability**

25. Murwin Jr., Thad, Gordon, and Murwin III were conscious of the potential withdrawal liability that Apex and Allied Concrete owed the Fund.

26. On September 26, 2007, Murwin Jr. sent the Fund a letter that requested an estimate of Apex's withdrawal liability..

27. On November 5, 2007, the Fund provided Murwin Jr. with the requested estimate, a copy of which is attached as **Exhibit A** and incorporated herein by reference.

**C. The Assets of Apex and Allied Concrete Prior to Apex's Withdrawal from the Fund**

28. Thad died on September 1, 2009.

29. After Thad's death, Apex and Allied Concrete owned millions of dollars in assets; these assets included at least the following:

(a) the proceeds of a $1,912,895.86 insurance policy that Allied Concrete held on Thad's life, and

(b) a $1,867,012 receivable that – according to Allied Concrete's 2010 federal tax return – was owed to Allied Concrete by an unnamed "affiliate"; significantly, Apex's corresponding federal tax return makes no reference to this debt, thereby indicating that this receivable was owed by an affiliate of Allied Concrete other than Apex.

30. In 2009, Allied Concrete paid Murwin family members $478,690 in compensation: $236,777 to Murwin Jr., $153,480 to Murwin III, and $88,433 to Thad.

31. On December 31, 2009, Allied Concrete was appraised for purposes of valuing Thad's estate; the appraised value of Allied Concrete was $2.4 million.

32. In 2009, after Thad's death, Allied Concrete paid Thad's estate $1,199,863 to purchase Thad's stock in Allied Concrete.

5

### D. The Fund's Assessment of Withdrawal Liability upon Apex and Allied Concrete

33. After Thad's death, Murwin Jr. became the owner of 99.188% of the stock in each Apex and Allied Concrete.

34. After Thad's death, Murwin III owned the remaining stock in each Apex and Allied Concrete.

35. Due to the common ownership of stock in Apex and Allied Concrete held by Murwin II and Murwin III after Thad's death, the two companies remained "under common control," so that Allied Concrete continued to share joint and several liability of Apex's withdrawal liability.

36. On or about November 1, 2011, Apex ceased all covered operations under the Fund and effected a "complete withdrawal" from the Fund within the meaning of MPPAA Section 4203(a)(2), 29 U.S.C. § 1383(a)(2).

37. The Fund subsequently determined that Apex and all trades or businesses under "common control" with Apex owed $2,775,803.89 in withdrawal liability as a result of Apex's complete withdrawal from the Fund.

38. On January 12, 2012, the Fund sent Apex and all trades or business under "common control" with Apex a demand for payment of $2,755,803.89 in withdrawal liability in accordance with Section 4219(b)(1) of MPPAA, 29 U.S.C. § 1399(b)(1).

39. Neither Apex, Allied Concrete, nor any other person or entity responded to the assessment of withdrawal liability dated January 12, 2012.

### E. The Disappearance of Assets Held by Apex and Allied Concrete

40. According to Allied Concrete's 2011 federal income tax return, the company had a "negative net income" of $4,008,473 that year; part of this negative income resulted from the writing off of $2,314,664 in allegedly bad debt.

6

41. According to Allied Concrete's federal income tax return, as of December 31, 2011, the company had a "negative net worth" of $2.4 million.

42. Both Apex and Allied Concrete claim to lack any assets to pay any portion of the withdrawal liability owed the Fund.

**F. The Business Activities of Murwin Jr., Murwin III, and Gordon Since the Demise of Apex and Allied Concrete**

43. Apex and Allied Concrete each formerly maintained its principal place at 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

44. The following defendants, Murwin Property, DRE, Allied Landscape, and Murwin Construction (collectively designated herein as the "Murwin Companies"), at all times relevant herein have maintained their principal places of business at the same address formerly occupied by Apex and Allied Concrete; namely, 1752 Limekiln Pike, Dresher, Pennsylvania 19025.

45. Murwin family members control the overwhelming majority of stock in the Murwin Companies.

46. At Murwin Construction, Murwin Jr. and his sons, Murwin III and James Murwin, each own one-third of the stock in the company. James is the President of Murwin Construction, and Murwin Jr. is Vice President and Secretary. Defendant Gordon is Treasurer.

47. At Allied Landscape, Murwin III and James each own 22.67% of the company. Murwin Jr. owns a 21.33% interest in the company. Keith Dick, not a family member, owns 33% of Allied Landscape. Murwin III is President of Allied Landscape, Dick is Vice President, Murwin Jr. is Secretary, and Gordon is Treasurer.

48. DRE, the general partner of Murwin Property, is owned 50% by Murwin Jr. and 50% by Thad's estate. Murwin Jr. is President of DRE, and Gordon is Treasurer.

7

49. Murwin Property is owned 49.5% by Murwin Jr., 49.5% by Thad's estate, and 1.0% by DRE.

50. Although Murwin Construction was incorporated in 2004, the company's website represents that, "We've been serving the people of Bucks and Montgomery Counties and the surrounding areas with great success since 1977."

## COUNT I

### CLAIM AGAINST APEX FOR WITHDRAWAL LIABILITY

51. Einhorn re-avers all of the allegations set forth in paragraphs 1-50, herein.

52. Apex has never paid any portion of the withdrawal liability owed to the Fund.

53. By failing to respond to the January 12, 2012 assessment of withdrawal liability, Apex has waived all administrative remedies for challenging the assessment and is legally precluded from challenging the assessment in any forum.

54. Apex has "defaulted" on its obligation to pay withdrawal liability to the Fund and, in accordance with Section 4219(c)(5) of MPPAA, 29 U.S.C. § 1399(c)(5), owes the entire $2,775,803.89 assessment of withdrawal liability to the Fund in a lump sum plus interest.

55. The Fund's Plan Document authorizes liquidated damages on delinquent withdrawal liability at the rate of twenty percent (20%) of the withdrawal liability.

56. The Fund is entitled to all legal remedies that result from Apex's withdrawal from the Fund and waiver of administrative remedies.

## COUNT II

### CLAIM AGAINST ALLIED CONCRETE FOR WITHDRAWAL LIABILITY

57. Einhorn re-alleges all the allegations set forth in paragraphs 1-56, herein.

58. Allied Concrete is bound by Apex's waiver of administrative remedies for challenging the withdrawal liability assessment.

SL1 1255736v1 027202.00207

59. Allied Concrete is jointly and severally liable for the withdrawal liability incurred by Apex pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and 26 U.S.C. § 412(c)(11)(b); the Fund is entitled to the same remedies against Allied Concrete that the Fund has against Apex.

## COUNT III

### CLAIM AGAINST ALL THE NAMED DEFENDANTS FOR FAILURE TO PRODUCE INFORMATION REQUIRED BY SECTION 4219(A) OF MPPAA

60. Einhorn re-avers all the allegations set forth in Paragraphs 1-59, herein.

61. Upon determining that Apex and Allied Concrete lacked assets to pay any portion of the withdrawal liability owed the Fund, the Fund began to investigate whether any other persons or entities also owed all or part of that liability.

62. In pursuing this investigation, the Fund exercised the authority in Section 4219(a) of MPPAA, 29 U.S.C. §1399(a), which authorizes the Fund to obtain information necessary to collect withdrawal liability.

63. In conducting this investigation, the Fund was originally represented by other counsel; the Fund subsequently assigned the investigation to the firm of Stevens & Lee ("S&L") which also represents the Central Pennsylvania Teamsters Pension Fund ("Central Pennsylvania Fund"), in matters related to the withdrawal liability of Apex and Allied Concrete.

64. Before being retained by the Fund in this matter, S&L had already requested Apex, Allied Concrete, and the Murwin Companies to provide to the Central Pennsylvania Fund certain information required by Section 4219(a) of MPPAA; as demonstrated below, S&L subsequently consolidated the information requests submitted on behalf of this Fund with those originally submitted only on behalf of the Central Pennsylvania Fund so that all information requests must be considered as submitted on behalf of both Funds.

9

SL1 1255736v1 027202.00207

65. Attached hereto is **Exhibit B** and incorporated herein by reference, is a copy of a letter that S&L sent to counsel for Apex, Allied Concrete, and the Murwin Companies on December 20, 2012; this letter identified information requested pursuant to Section 4219(a) of MPPAA, and explained the reasons for the request.

66. When the letter of December 20 received no response, S&L sent a follow-up letter dated January 30, 2013, a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference.

67. On February 8, 2013, counsel for Apex, Allied Concrete, and the Murwin Companies telephoned an attorney at S&L and stated that his clients would produce the requested information by February 15, 2013; attached hereto as **Exhibit D** and incorporated herein by reference is a letter from the attorney at S&L that confirmed this conversation.

68. Attached hereto as **Exhibit E** is a letter that counsel for Apex, Allied Concrete, and the Murwin Companies sent to S&L on February 18, 2013; this letter offered to produce "much of the information requested" pursuant to an incremental approach in which Apex, Allied Concrete, and the Murwin Companies would produce certain information and the Fund would then determine whether to request additional information.

69. Murwin, Jr. received a copy of his counsel's letter dated February 18, 2013.

70. Attached hereto as **Exhibit F** and incorporated herein by reference, is the response of S&L dated March 6, 2013, this response expressed a willingness to proceed according to an incremental approach but identified additional information that should be included in the initial production of documents.

71. On September 27, 2012 and June 17, 2013, when the Fund was still represented by other counsel, counsel for Apex, Allied Concrete, and the Murwin Companies

10

permitted an accountant for the Fund to examine Apex's and Allied Concrete's certain federal tax returns.

72. Attached hereto as **Exhibit G** and incorporated herein by reference is a copy of a letter dated July 18, 2013, in which S&L explained to counsel for Apex, Allied Concrete, and the Murwin Companies that S&L now represented both Funds and stated that "you should now consider the information requests presented to your clients pursuant to Section 4219(a) of MPPAA…as made on behalf of both Funds."

73. S&L's July 18 letter sought "a final answer" as to whether Apex, Allied Concrete, and the Murwin Companies would produce the information requested pursuant to Section 4219(a).

74. Attached hereto as **Exhibit H** and incorporated herein by reference is a letter dated August 12, 2013, that counsel for Apex, Allied Concrete, and the Murwin Companies sent to S&L; this letter clearly stated that the Murwin Companies would never agree to produce various of the items requested pursuant to Section 4219(a).

75. "William Murwin," either Murwin Jr. or Murwin III, received a copy of counsel's letter dated August 12, 2013.

76. Attached hereto as **Exhibit I** and incorporated herein by reference is the response of S&L dated August 23, 2013. The response stated that the refusal to produce the contested documents made litigation inevitable and that the Fund would draw an adverse inference from the failure to produce these documents.

77. Attached hereto as **Exhibit J** and incorporated by reference herein is a response of counsel for Apex, Allied Concrete, and the Murwin Companies dated August 26, 2013.

11

78. Attached hereto as **Exhibit K** and incorporated by reference herein is the response of S&L dated August 27, 2013.

79. The information that the Defendants have refused to produce pursuant to Section 4219(a) is essential to the Fund's effort to collect withdrawal liability.

80. In withholding the documents requested pursuant to Section 4219(a), the Defendants have acted to avoid or evade the obligation of Apex and Allied Concrete to pay the withdrawal liability owed by the Fund.

81. The Defendants' withholding of these documents also violated Section 4212(c) of MPPAA, 29 U.S.C. § 1392(c).

## COUNT IV

### CLAIM AGAINST MURWIN JR., MURWIN III, AND GORDON FOR INTENDING TO AVOID OR EVADE WITHDRAWAL LIABILITY

82. Einhorn re-alleges all the allegations set forth in Paragraphs 1-81, herein.

83. At the time that Apex withdrew from the Fund, Apex and Allied Concrete had assets worth millions of dollars that should have been used to pay some or all of the withdrawal liability owed to the Fund ("Assets").

84. Murwin Jr., Murwin III, and Gordon knew or had notice of Apex's and Allied Concrete's obligation to pay withdrawal liability to the Fund.

85. Murwin Jr., Murwin III and Gordon had no intention of permitting Apex or Allied Concrete to pay any portion of the withdrawal liability owed the Fund and, therefore, decided to divest Apex and Allied Concrete of the Assets by converting the Assets to their own use.

86. To further their goal of avoiding or evading withdrawal liability, Murwin Jr., Murwin III, and Gordon engaged in a series of transactions to divest Apex and Allied of the

Assets; these transactions included transferring the Assets to their own use, erroneously representing that Apex and Allied had no money to pay the withdrawal liability, failing to respond to the Fund's efforts to collect the withdrawal liability, and refusing to produce the documents that the Fund requested pursuant to Section 4219(a) of MPPAA.

87. By their aforementioned conduct, Murwin Jr., Murwin III, and Gordon have engaged in transactions that each had a principal purpose of evading or avoiding the withdrawal liability that Apex and Allied Concrete owe the Fund.

## COUNT V

### CLAIM AGAINST MURWIN JR., MURWIN III, AND GORDON FOR CONSTRUCTIVE TRUST

88. Einhorn re-alleges all the allegations set forth in Paragraphs 1-87, herein.

89. The Assets constitute a separate and identifiable pool of money in the possession and control of Murwin Jr., Murwin III, and Gordon.

90. Under Article IX of the Fund's Pension Plan and MPPAA, Murwin Jr., Murwin III, and Gordon had and continue to have an obligation to convey the Assets to the Fund.

91. Murwin Jr., Murwin III, and Gordon have wrongfully withheld the Assets from the Fund.

92. The Court should find that Murwin Jr., Murwin III, and Gordon are Constructive Trustees of the Assets.

93. This Court should direct Murwin Jr., Murwin III, and Gordon to convey to the Fund the Assets, together with appropriate interest and any profits earned on the Assets.

13

WHEREFORE, Einhorn prays the Court to grant him the following relief:

(a) A judgment that requires Apex to pay immediately all withdrawal liability owed the Fund;

(b) an Order declaring Allied Concrete to be under common control with Apex;

(c) a judgment that requires Allied Concrete to pay immediately all withdrawal liability owed the Fund;

(d) an Order declaring Murwin Jr., Murwin III, and Gordon Constructive Trustees of the Assets of Apex and Allied Concrete, directing them to render an accounting of the Assets, and ordering that they convey to the Fund the Assets with prejudgment interest and all profits earned on the Assets;

(e) liquidated damages from Apex, Allied Concrete, Murwin Jr., Murwin III, and Gordon;

(f) prejudgment interest;

(g) attorneys' fees and costs;

(h) an Order directing the Defendants to provide the information requested by the Funds pursuant to Section 4219(a);

(i) a permanent injunction enjoining all Defendants from any future violations of MPPAA, or any other aspect of ERISA; and

(j) such other relief as the Court finds appropriate.

STEVENS & LEE

By: _/s/ Jo Bennett_____
Frank C. Sabatino (Pa. ID No. 30147)
fcs@stevenslee.com
Jo Bennett (Pa. ID No. 78333)
jb@stevenslee.com
1818 Market Street, 29th Floor
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2883
Fax: (610) 988-0869

Attorneys for Plaintiff

Dated: September 19, 2013